**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

**MODERN WOODMEN OF AMERICA,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 5:15-CV-243 (MTT)**

**KONINKLIJKE AHOLD,**

**Defendant.**

**ORDER**

Defendant Koninklijke Ahold ("Ahold") has moved for judgment on the pleadings against Plaintiff Modern Woodmen of America ("MWA"). (Doc. 11). For the following reasons, Ahold's motion is **DENIED**.

## I. BACKGROUND[1]

This case arises from a dispute regarding Ahold's alleged breach of a guaranty. On December 6, 1991, Ahold's subsidiary BI-LO, Inc. entered into a lease agreement with Pridemore Development Company ("Pridemore"). (Doc. 1, ¶¶ 7-8). The lease named BI-LO, Inc. as the tenant of Pridemore's grocery store and provided that "[u]pon an assignment of this Lease by Tenant, Tenant shall not be released by said assignment from any liability or obligation for the future performance or breach of any covenant or condition specified herein." (*Id.*; Doc. 1-2 at 24).

An unsigned, undated form guaranty was "made a part" of the lease and attached to it. (Doc. 1-2 at 4, 55). On April 10, 1992, Ahold signed the guaranty stating it, as guarantor, would "guarantee the payments of rents by Lessee under the

[1] The facts are taken from MWA's complaint (Doc. 1) and accepted as true for purposes of this motion.

Lease …." (Doc. 1-3). The guaranty further stated that Ahold "irrevocably and unconditionally guarantees the due fulfillment by Lessee of its obligations to pay the rents provided in the Lease, as and when due, under the Lease as amended from time to time …." (*Id.*). MWA alleges that Ahold also guaranteed "future lease modification agreements duly executed by BI-LO." (Doc. 1, ¶ 9). Pridemore and BI-LO, Inc. executed a Confirmation of Lease Term Agreement on September 15, 1993. (*Id.* ¶ 15; Doc. 1-5). This agreement provided that the lease term would expire on January 31, 2013. (Doc. 1-5).

While Ahold did not sign the guaranty when the lease agreement was executed, MWA alleges it was Ahold's "practice and custom," being located in the Netherlands, not to immediately execute the guaranty agreement upon the execution of the lease. (Doc. 1, ¶ 10). MWA further alleges "the Guaranty [was] an integral part of the Lease" and "relates back to the execution of the Lease…." (*Id.* ¶ 11). Indeed, "Ahold … represented, authorized, and/or acquiesced in the representations made by its then-subsidiary, BI-LO, concerning Ahold's intent and agreement to sign the guaranty agreement as part of the Lease transaction." (*Id.* ¶ 12).

On October 8, 2000, "BI-LO, Inc. assigned its interest in the Lease to BI-LO, LLC." (*Id.* ¶ 18). BI-LO, LLC and Pridemore agreed to extend the lease term to January 31, 2017 in a Lease Modification Agreement executed on August 30, 2001. (*Id.* ¶ 16; Doc. 1-6).

In May 2002, Plaintiff MWA loaned money to Pridemore pursuant to the terms of a promissory note, and they "executed an Assignment of Leases and Rents" in which "Pridemore absolutely and unconditionally assigned to [MWA]" the lease between

Pridemore and BI-LO, Inc., "as well as all rents under [the] lease, including the right to enforce any security given in connection" with the lease. (Docs. 1, ¶ 6; 1-1).

In February 2006, BI-LO, LLC assigned the lease to Southern Family Markets who then assigned the lease to Belle Foods, LLC. (Doc. 1, ¶ 18). MWA alleges that "[p]ursuant to the terms of the Lease, BI-LO remained liable for all rental and other financial obligations required during the Lease's term in the event the assignees defaulted or otherwise failed to perform these obligations." (*Id.*).

In May 2007, Ahold certified in a Certificate of Guarantor to MWA that "the Guaranty was in full force and effect, but only to the extent of the covenants and obligations of the tenant under the Lease as they existed on January 29, 2005." (Doc. 1-4). Even though the Certificate of Guarantor was executed after BI-LO, Inc. assigned the lease to BI-LO, LLC, Ahold referred to the tenant as "Bi-Lo, Inc. n/k/a Bi-Lo, LLC," or "Bi-Lo." (*Id.*).

In August 2007, "Pridemore sold and assigned its interests in the leased premises to Rosen Monroe, LLC ('Rosen Monroe'). Pursuant to this transaction, Rosen Monroe executed a Loan Assumption Agreement … whereby it assumed Pridemore's obligations under the Note and all related loan documents existing between Pridemore and [MWA], including the Assignment of Leases and Rents …." (Doc. 1, ¶ 17). MWA alleges that Rosen Monroe is now "in default under the Note" and "has declared the entire remaining balance on the Note immediately due and payable." (*Id.* ¶ 21). Further, "pursuant to … the Assignments of Leases and Rents, [MWA] has revoked Rosen Monroe's license to collect rents under the Lease and is … directly pursuing enforcement and payment under the Guaranty." (*Id.*).

On "March 23, 2009, BI-LO filed for … Bankruptcty …, and the Lease was rejected by [the] bankruptcy court." (*Id.* ¶ 18). Belle Foods, LLC continued to make payments under the lease until it filed for bankruptcy. (*Id.* ¶ 19). Since Belle Foods, LLC's bankruptcy, no "Fixed Rent or Additional Rent payments under the Lease for the period January 1, 2014 until the filing of this action" have been paid. (*Id.* ¶ 31). MWA alleges that "BI-LO" as the lessee "is in default under … the Lease due to its adjudication of bankruptcy …." (*Id.* ¶ 29). MWA further alleges that despite the repeated demands it has made, "Ahold has breached the Guaranty it executed by refusing to pay the past due and future Fixed Rent and Additional Rent payments for the remaining term of the Lease." (*Id.* ¶ 34).

## II. DISCUSSION

### A. Motion for Judgment on the Pleadings Standard

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion. *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999) ("When reviewing judgment on the pleadings, we must take the facts alleged in the complaint as true and view them in the light most favorable to the non-moving party.").

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

**B. Analysis**

Ahold raises four arguments in support of its motion: (1) "[t]he Purported Guaranty limits Ahold's obligation to remit rent payments due from BI-LO, Inc. only under the Lease"; (2) "Ahold has been released from the Purported Guaranty" because "BI-LO, LLC and Pridemore changed the terms of the Lease without the consent … of Ahold"; (3) "MWA … lacks standing, as it is neither a party to nor an intended third-party

beneficiary of the Purported Guaranty"; and (4) "[t]he Purported Guaranty … fails for lack of consideration." (Doc. 12 at 5, 13-14, 16).

**1. Ahold's Obligations under the Guaranty**

Ahold relies on two arguments to support its position that it is liable for only BI-LO, Inc.'s obligations under the lease. First, Ahold's obligations under the guaranty terminated when BI-LO, Inc. assigned the lease to BI-LO, LLC because "Lessee" in the guaranty refers to only BI-LO, Inc. and not BI-LO, LLC. (Doc. 12 at 5). Second, even if Ahold's obligations did not end after the assignment to BI-LO, LLC, they ended when BI-LO, LLC assigned the lease. (*Id.*).

**a. Whether Ahold's Obligations under the Guaranty Terminated Upon BI-LO, Inc.'s Assignment of the Lease to BI-LO, LLC**

"Georgia courts strictly construe guaranty agreements in favor of the guarantor. And the guarantor's liability cannot be extended by implication or interpretation." *Caves v. Columbus Bank, etc., Co.*, 264 Ga. App. 107, 114-15, 589 S.E.2d 670, 676 (2003) (footnote omitted). A guarantor's "liability is established by the terms of the guaranty." *Hood v. Peck*, 269 Ga. App. 249, 251, 603 S.E.2d 756, 758 (2004).

Citing *PlayNation Play Systems, Inc. v. Jackson*, 312 Ga. App. 340, 718 S.E.2d 568 (2012), Ahold argues that Georgia law "requires a strict reading of the word 'lessee'" in the guaranty to be limited to BI-LO, Inc. alone and not BI-LO, LLC or any other assignee. (Docs. 12 at 5; 14 at 6-7). In *PlayNation*, the defendant guaranteed the debt obligations of a fictitiously named company "Swingset Planet" whose name was subsequently changed to "PlayNation Parties and Playgrounds." 312 Ga. App. at 340, 718 S.E.2d at 569. PlayNation Parties and Playgrounds defaulted on its loan, and the plaintiff sought to recover from the defendant-guarantor. *Id.* at 341, 718 S.E.2d at 569.

The Georgia Court of Appeals affirmed judgment for the guarantor, concluding the guarantor "could not be held responsible for the debt of PlayNation Parties because the debtor listed on the guaranty was Swingset Planet." *Id.* "To hold otherwise would extend a guarantor's liability by implication or interpretation—an act forbidden to the courts." *Id.* at 342, 718 S.E.2d at 569.

MWA contends that *PlayNation* is distinguishable because here, *inter alia*, Ahold certified that BI-LO, Inc. and BI-LO, LLC are the same entity in the Certificate of Guarantor by describing the original lease agreement in 1991 as between Pridemore and "Bi-Lo, Inc. n/k/a Bi-Lo, LLC, as tenant ('Bi-Lo')." (Docs. 1-4; 13 at 9-10). The Court agrees. Although the guaranty defined the tenant as BI-LO, Inc., Ahold, in the Certificate of Guarantor, treated BI-LO, Inc. and BI-LO, LLC as the same entity—the tenant under the guaranty—and certified that it guaranteed "Bi-Lo['s]" obligations as they existed on January 29, 2005. (Doc. 1-4). It cannot be said the Court is improperly extending the guarantor's liability to the obligations of an improper entity by implication or interpretation where the guarantor itself explicitly certifies it guarantees the obligations of that same entity. Therefore, taking the allegations as true and drawing all reasonable inferences in MWA's favor, the Court concludes Ahold certified it would guarantee the obligations of BI-LO, LLC.[2]

**b. Whether Ahold's Obligations under the Guaranty Terminated upon Subsequent Assignments**

Ahold argues "[t]here is a complete absence of language in the Purported Guaranty that could conceivably hold Ahold responsible for rent obligations of any of

[2] As a result of this conclusion, the Court will refer to BI-LO, Inc. and BI-LO, LLC as BI-LO for the remainder of this Order.

BI-LO[']s assignees." (Doc. 12 at 5). MWA responds that "by its clear language, the Guaranty establishes Ahold as a guarantor of its subsidiary tenant's (BI-LO's) obligations to pay the rents provided in the Lease" which "in turn establishes that BI-LO, and by extension under the Guaranty Ahold, continues to shoulder liability, after assignment, for a subtenant's default on rent payments." (Doc. 13 at 4).

Ahold primarily relies on two cases: *Blockbuster Investors LP v. Cox Enterprises, Inc.*, 314 Ga. App. 506, 724 S.E.2d 813 (2012), and *Highwoods Realty, L.P. v. Community Loans of America, Inc.*, 288 Ga. App. 226, 653 S.E.2d 807 (2007). In *Blockbuster*, the defendant-guarantor moved to dismiss the landlord's suit seeking to enforce the lease obligations of the assignee of Cox Enterprises, Inc.—the original tenant whose debt obligations the defendant had guaranteed. 314 Ga. App. at 506, 724 S.E.2d at 814. The guaranty defined the "Tenant" as Cox Home Video, Inc. *Id.* at 507, 724 S.E.2d at 814. The Georgia Court of Appeals held that, under the plain language of the guaranty, the defendant only guaranteed the debt obligations of Cox Home Video, Inc. and not any assignees' obligations. *Id.*, 724 S.E.2d at 815.

In *Highwoods*, the defendant-guarantor executed a guaranty stating that it guaranteed all obligations of the tenant under the lease as well as any amendment to the lease. 288 Ga. App. at 226, 653 S.E.2d at 808. The tenant assigned the lease but continued to be obligated as an "unreleased assignor to ensure its agreed-upon obligations under the lease were met" until the end of the agreed-upon lease term. *Id.* The guarantor executed an addendum agreeing that the "assignment of the lease … did not affect the validity of its guaranty." *Id.* at 226-27, 653 S.E.2d at 808. After the completion of the lease term, the assignee and the landlord agreed to an extension, but

the assignee filed for bankruptcy. *Id.* at 227, 653 S.E.2d at 808. The landlord sued the guarantor for rent payments owed by the assignee. *Id.* The court of appeals concluded that pursuant to the language of the guaranty, the guarantor only agreed to fulfill the obligations of the original tenant and not any assignee. *Id.* However, these obligations included the original tenant's *post-assignment* obligations through the lease term that the original tenant agreed to. *See id.* "[I]ndeed, [the guarantor] reaffirmed its continuing obligations under the guaranty" in the "Addendum to Unconditional Guaranty" during the post-assignment period until the end of the agreed-upon lease term. *Id.*

MWA contends "[*Blockbuster*] is not instructive here because it did not deal with a guarantor's continuing obligations for a tenant's liability as an unreleased assignor." (Doc. 13 at 6). The Court agrees. However, *Highwoods* is instructive. Similar to the guaranty in *Highwoods*, the guaranty here provided that Ahold "irrevocably and unconditionally guarantees" the fulfillment of BI-LO's obligations as defined by the lease, which may be amended. (Doc. 1-3). In the lease, BI-LO agreed it would not be released from its obligations "[u]pon an assignment" if the assignee failed to fulfill its obligations. (Doc. 1-2 at 24). And by extending the lease term in the Lease Modification Agreement, BI-LO agreed its obligations as an unreleased assignor would continue until 2017. (*Id.*; Doc. 1-6). Thus, just as the guarantor in *Highwoods* agreed in the guaranty and the addendum that its obligations would continue post-assignment through the agreed-upon lease term, Ahold agreed in the guaranty and the Certificate of Guarantor that it would guarantee the fulfillment of BI-LO's post-assignment obligations as an "unreleased assignor" through the agreed-upon lease term ending in 2017.

In sum, based on the allegations of the complaint, the assignments of the lease did not release BI-LO's continuing obligations as an unreleased assignor to pay rent if an assignee defaulted, and thus, the assignments did not release Ahold from its guaranty of the fulfillment of BI-LO's continuing obligations as an unreleased assignor. Accordingly, Ahold is not entitled to judgment on the pleadings on this ground.

**2. Whether Changes to the Lease Terms Released Ahold from the Guaranty**

Ahold alternatively argues that the changes to the lease terms in the Lease Modification Agreement—namely the extension of the lease—without Ahold's consent released it from its obligations under the guaranty. (Doc. 12 at 13). MWA responds that (1) Ahold's argument ignores language in the guaranty that constitutes Ahold's advance consent to amendments to the lease; (2) the parties contemplated in the lease that its term may be extended; and (3) the Certificate of Guarantor executed by Ahold certifies that the guaranty covers the obligations of the tenant under the lease existing on January 29, 2005 and thus covers the terms of the amendment executed on August 30, 2001. (Doc. 13 at 11-12).

Pursuant to O.C.G.A. § 10-7-21, "[a]ny change in the nature or terms of a contract is called a 'novation'; such novation, without the consent of the surety, discharges him." However, a "surety or guarantor may consent in advance to a course of conduct which would otherwise result in his discharge." *Steiner v. Handler*, 229 Ga. App. 833, 836, 495 S.E.2d 132, 134-35 (1997) (internal quotation marks and citation omitted). For example, in *Hood v. Peck*, the Georgia Court of Appeals held that the guarantor was not discharged from liability after a novation by the lessor to the terms of a lease because the guaranty gave the lessor authority "to amend, modify, change or

supplement the Lease." 269 Ga. App. at 252, 603 S.E.2d at 759. Similarly, in *Southeastern Hose, Inc. v. Prudential Insurance Company of America*, the court of appeals held that a novation to a lease agreement did not discharge the guarantor's liability because the guarantor "consented in advance to any 'modifications, extensions, amendments'" to the lease. 167 Ga. App. 356, 306 S.E.2d 308, 310 (1983) (quoting the guaranty at issue).

As in *Hood* and *Southeastern Hose, Inc.*, the parties here contemplated in the guaranty that the lease may be amended: "Guarantor hereby irrevocably and unconditionally guarantees the due fulfillment by Lessee of its obligations to pay the rents provided in the Lease, as and when due, under the Lease *as amended from to time*…." (Doc. 1-3 (emphasis added)). This supports MWA's allegation that Ahold guaranteed "future lease modification agreements duly executed by BI-LO." (Doc. 1, ¶ 9). Thus, at this stage in the litigation, the Court concludes that this lease provision sufficiently alleges Ahold's consent in advance to amendments to the lease. Accordingly, Ahold is not entitled to judgment on the pleadings on this ground.

**3. Whether MWA Lacks Standing to Enforce the Guaranty[3]**

Ahold also argues that MWA does not have standing to enforce the guaranty because "it is neither a party to nor intended third-party beneficiary of the Purported Guaranty." (Doc. 12 at 14). MWA responds that the guaranty's language (1) that Ahold guarantees BI-LO's obligations without "qualification as to whom such payments are

[3] In its reply brief, Ahold argues that MWA did not address and thus concedes its argument that because the Assignment of Leases and Rents refers to a September 3, 1993 lease rather than the December 6, 1991 lease at issue here, MWA does not have the right to enforce the lease. (Doc. 14 at 10). However, MWA devoted at least two pages to this argument explaining that the confusion is the result of a typographical error, an error that is obvious when the documents are viewed in context. (Doc. 13 at 14-15). The Court agrees that MWA has sufficiently alleged that the December 6, 1991 lease was covered by the Assignment of Leases and Rents. (Docs. 1, ¶ 6; 1-1 at 9; 1-2 at 57).

owed" and (2) that Ahold consents to Georgia's jurisdiction if the "Lessor or its *assignee*" brings an action to enforce the guaranty evidences the parties' intent that the guaranty applies to Pridemore's assignees such as MWA. (Doc. 13 at 12-13) (emphasis added). Further, "the Guaranty followed the assignment of the Lease by operation of Georgia law without the necessity of Ahold's assent." (*Id.* at 13).

The Court agrees that the language of the guaranty sufficiently alleges the parties' intent to allow Pridemore's assignees, such as MWA, to bring causes of action to enforce the guaranty. Ahold expressly guaranteed the fulfillment of BI-LO's rental obligations and expressly consented to jurisdiction in the state of Georgia if Pridemore or "its assignee" brought "any action … to enforce this Guaranty." (Doc. 1-3).

Further, pursuant to Georgia law, "an assignment of the principal obligation is held to be an assignment of the guaranty as long as the assignor of the obligation is the obligee of the guaranty." *Warren Ave. Assocs., Ltd. v. United Rent-All, Inc.*, 583 F. Supp. 125, 126 (N.D. Ga. 1984) (citing *Ampex Credit Corp. v. Bateman*, 554 F.2d 750 (5th Cir. 1977)); *see also Hurst v. Stith Equip. Co.*, 133 Ga. App. 374, 377, 210 S.E.2d 851, 854 (1974) ("While the transfer of the principal obligation may operate as an assignment of the guaranty[,] we perceive this rule to apply only where the assignor of the principal obligation is also the obligee of the guaranty." (citation omitted)). In such circumstances, the assignee "is entitled to enforce the guaranty despite the absence of a specific assignment of the guaranty." *Warren Ave. Assocs., Ltd.*, 583 F. Supp. at 126. Here, Pridemore, the original obligee under the guaranty, assigned the lease to MWA in the Assignment of Leases and Rents. (Docs. 1, ¶ 6; 1-1). Thus, MWA has sufficiently

alleged that it is entitled to enforce the guaranty. Accordingly, Ahold is not entitled to judgment on the pleadings on this ground.

**4. Whether the Guaranty Is Void for Lack of Consideration**

Ahold also argues that it has no obligations under the guaranty because it was "executed four (4) months after the Lease was executed," and "[n]o new consideration flowed to Ahold between the date of the signing of the Lease and the date of the signing of the Purported Guaranty." (Doc. 12 at 19). MWA responds that its allegations and the documents attached to its complaint "demonstrate that the Guaranty is part of the underlying Lease transaction and is adequately supported by the parties' promises and agreements made to one another at that time, including BI-LO's agreement to provide a guaranty from its then parent, Ahold." (Doc. 13 at 18).

"The contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit ... given to his principal...." O.C.G.A. § 10-7-1. "A promise to pay the pre-existing debt of another, without any detriment or inconvenience to the creditor or any benefit secured to the debtor in consequence of the undertaking, is a mere Nudum pactum." *Gwinnett Commercial Bank v. Flake*, 151 Ga. App. 578, 582, 260 S.E.2d 523, 526 (1979). Thus, a "guaranty executed after the original obligation must be founded on some new type of consideration, independent of that flowing to the principal and flowing directly to the guarantor." *Id.* at 582-83, 260 S.E.2d at 526. Where "[p]ast consideration … has already served its purpose in a former transaction[, it] will not support a contract of guaranty." *Id.* at 583, 260 S.E.2d at 526.

However, where a guaranty is executed contemporaneously with the underlying promissory note, "the making of the loan to the principal is sufficient consideration to support the separate Guaranty." *Sec. Pac. Bus. Fin., Inc. v. Lichirie Ventures-Godby Plaza, Ltd.*, 703 F. Supp. 936, 939 (N.D. Ga. 1989) (citing *Beard v. McDowell*, 174 Ga. App. 793, 331 S.E.2d 104 (1985), and *Griswold v. Whetsell*, 157 Ga. App. 800, 278 S.E.2d 753 (1981)). The fact that a guaranty is executed *after* the making of a loan is immaterial where the loan and guaranty are part of "one transaction." *See Jackson v. First Bank of Clayton Cty.*, 150 Ga. App. 182, 184, 256 S.E.2d 923, 925 (1979); *see also Shropshire v. Alostar Bank of Commerce*, 314 Ga. App. 310, 317 n.30, 724 S.E.2d 33, 40 n.30 (2012).

Ahold relies on *Helton v. Jasper Banking Co.*, 311 Ga. App. 363, 715 S.E.2d 765 (2011) to support its argument. There, the court of appeals reversed the trial court's decision to grant summary judgment in the bank's favor because the guarantor's affidavit testimony that the wrong date was on the guaranty created a genuine issue of fact whether the guaranty was executed after a "bank had already extended credit to the underlying debtor, and thus over whether the guaranty was void for lack of consideration." *Id.* at 363, 366, 715 S.E.2d at 766-67. However, the court in *Helton* did not address the issue in this case: whether a guaranty executed subsequent to the underlying agreement was part of the same transaction as that underlying agreement.

The Georgia Court of Appeals did address this question in *Jackson v. First Bank of Clayton County*, which MWA cites in support of its argument. (Doc. 13 at 17). There, a bank sought to enforce a guaranty executed by a father on a promissory note. *Jackson*, 150 Ga. App. at 182, 256 S.E.2d at 924. The father signed the guaranty a day

after the bank disbursed funds to his son. *Id.* at 182-84, 256 S.E.2d at 924-25. In affirming summary judgment for the bank, the Georgia Court of Appeals agreed that the fact the loan and the guaranty were signed a day apart was "totally immaterial" because the two were executed as part of "one transaction." *Id.* at 184, 256 S.E.2d at 925; *see also Shropshire*, 314 Ga. App. at 317 n.30, 724 S.E.2d at 40 n.30.

Ahold argues *Jackson* is distinguishable because there, the guaranty was executed only a day after the promissory note, whereas here, the guaranty was executed four months after the lease agreement. (Doc. 14 at 9). However, this distinction does not demonstrate MWA has failed to sufficiently plead the guaranty was supported by consideration. The guaranty was "made a part" of the lease. (Doc. 1-2 at 4). Further, MWA has alleged that (1) the guaranty was integral to the lease; (2) Ahold, being in the Netherlands, had the custom to sign guaranties after lease agreements were executed; and (3) Ahold authorized BI-LO, its subsidiary, to represent that Ahold intended to sign the guaranty "as part of the Lease transaction." (Doc. 1, ¶¶ 10-12).[4] These allegations, taken as true with all reasonable inferences drawn in MWA's favor, demonstrate that the lease and the guaranty were part of "one transaction" and thus that the "the making of the loan to the principal [was] sufficient consideration to support the separate Guaranty." *Sec. Pac. Bus. Fin.*, 703 F. Supp. at 939 (alteration added). Accordingly, at this stage in the litigation, Ahold is not entitled to judgment on the pleadings on this ground.

[4] Ahold also points out the discrepancies between the form guaranty attached to the lease and the signed guaranty: (1) the form guaranty names "Ahold nv" as the guarantor, whereas the signed guaranty names "Koninklijke Ahold n.v."; and (2) the form guaranty names South Carolina as the choice of law, whereas the signed guaranty names Georgia. (Docs. 1-2 at 55-56; 12 at 17). However, these "customized changes differing in minor respects" do not demonstrate as a matter of law that the guaranty was not supported by consideration. (Doc. 13 at 18 n.15).

## III. CONCLUSION

For the foregoing reasons, Ahold's motion for judgment on the pleadings is **DENIED**. (Doc. 11).

**SO ORDERED**, this the 1st day of February, 2016.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT